## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

LAKERSKO BROWN, et al.,                )
                                       )
      Plaintiffs,                      )
                                       )
v.                                     )          No. 3:00-0665
                                       )          JUDGE ECHOLS
TENNESSEE DEPARTMENT OF                )
FINANCE  AND ADMINISTRATION            )
and M.D. GOETZ, Jr., Commissioner,     )
                                       )
      Defendants.                      )

## MEMORANDUM

The Plaintiff Class filed a First Amended Motion For Fees, Expenses and Costs (Docket Entry No. 257), to which Defendants (hereinafter referred to as "the State") filed a response in opposition (Docket Entry No. 262) and Plaintiffs filed a reply (Docket Entry No. 263). Plaintiffs seek an award of attorney's fees and expenses spanning the period January 1, 2007 to October 15, 2007. Plaintiffs ask the Court to award attorney's fees to Disability Law & Advocacy Center of Tennessee ("DLAC") in the amount of $72,500.00, along with expenses in the amount of $13,710.12, for a total award of $86,210.12. Plaintiffs also ask the Court to award attorney's fees to Kent E. Krause at the law firm of Brewer, Krause, Brooks, Chastain & Burrow PLLC in the amount of $28,540.00, along with expenses in the amount of $284.74, for a total award of $28,824.74. The grand total Plaintiffs seek for attorney's fees and expenses is $115,034.86.

The State does not dispute that, under the settlement agreement approved by the Court on June 17, 2004, Plaintiffs are the prevailing party entitled to an award of reasonable attorney's fees and expenses incurred in monitoring or enforcing the settlement agreement. In fact, the State

1

concedes that Plaintiffs previously received payments of attorney's fees and expenses through Agreed Orders submitted to the Court by the parties. The previous awards, the State argues, do not make all later work by the Plaintiffs' attorneys compensable. See Cody v. Hillard, 304 F.3d 767, 773 (8th Cir. 2002). The State objects to the current fee motion on the grounds that some of the attorney's fees and expenses requested are not reasonable or were not incurred "to monitor, enforce and plan for the duration of the agreement." (Docket Entry No. 262, Defendants' Response at 2-3.) The State does not challenge the $250.00 hourly rate charged by Plaintiffs' attorneys. The State requests that the Court hold in abeyance any decision about whether Plaintiffs are entitled to attorney's fees and expenses related to the State's motion to vacate the settlement agreement because the Court's decision denying that motion is pending on appeal in the Sixth Circuit and any award of attorney's fees and expenses to Plaintiffs prior to disposition of the appeal would be premature. The State suggests that an appropriate award of attorney's fees and expenses to DLAC would be $19,119.69 and an appropriate award to Brewer, Krause, Brooks, Chastain & Burrows would be $7,222.24.

The Court will consider each of the State's objections in turn. In ruling on each particular issue, the Court is guided by the language of the settlement agreement that "[p]laintiffs may file subsequent fee applications at later dates and it is acknowledged that plaintiffs will incur reasonable attorney fees, expenses and costs in order to monitor, enforce, and plan for the duration of this agreement." (Docket Entry No. 263-1, Settlement Agreement, § X.) The Court is also guided by the proposition that all post-judgment litigation, like all work under the fee-shifting statutes, must be reasonable in degree. Cody, 304 F.3d at 773. Legal services that are unreasonable, redundant, inefficient, or simply unnecessary are not compensable. Id.

2

**A. Plaintiffs' Opposition to A Motion to Appear Pro Hac Vice**

The State hired three attorneys from the Washington, D.C. law firm of Cooper & Kirk, PLLC to represent the State in post-judgment litigation. Attorneys Charles J. Cooper, Michael W. Kirk and Brian S. Koukoutchos filed motions for *pro hac vice* admission to the bar of this Court for purposes of appearing in the case. (Docket Entry Nos. 152, 153, 158.) Plaintiffs objected only to the motion filed by Mr. Koukoutchos. (Docket Entry No. 161.) The Court overruled Plaintiff's objection in a short Order entered on April 13, 2007. (Docket Entry No. 181.) The Court relied on a state statute granting authority to state officials to choose outside counsel as they deem necessary, Tenn. Code Ann. § 8-6-106, and the Court noted that Plaintiffs did not cite a single case granting the Court authority to intervene in the State's choice of counsel when all other requirements for *pro hac vice* admission had been met. (Id.)

Plaintiffs now justify the motion as reasonable because of the high hourly rate that Cooper & Kirk would charge to the State at a time when the State claimed it did not have the money to fund waiver services adequately. While Plaintiffs' concern about the use of state resources has merit, the Court finds the motion objecting to Mr. Koukoutchos' *pro hac vice* admission lacked a proper legal foundation. For this reason, any attorney's fees requested for work on this motion will be denied.

The State represents that Plaintiffs spent 7.6 attorney hours on this motion, and Plaintiffs do not challenge that figure. Of the 7.6 hours, .30 was billed by Mr. Krause, and the remainder was billed by DLAC. (Docket Entry No. 262-1.) Accordingly, the Court will deduct .30 hours at $250.00 for a total of $75.00 from Mr. Krause's billing statement and 7.3 hours at $250.00 per hour for a total of $1,825.00 from DLAC's billing statement.

**B. Plaintiffs' Motion for Injunction**

On May 5, 2007, Plaintiffs filed a Motion For Injunction (Docket Entry No. 182) complaining that the State, particularly DMRS Deputy Commissioner Steve Norris, divulged discussions of the parties during confidential settlement negotiations at public hearings before the House and Senate Budget Committees of the Tennessee General Assembly on March 7, 2007 and on April 18, 2007 respectively. Plaintiffs sought a permanent injunction to prohibit state officials from divulging private settlement negotiations in a public forum in the future.

The Court denied the motion in a Memorandum and Order entered on September 12, 2007 (Docket Entry Nos. 199 & 200), ruling that Deputy Commissioner Norris had an obligation to provide truthful testimony to the General Assembly. The Court also ruled that Plaintiffs did not meet the requirements for obtaining permanent injunctive relief under eBay Inc. v. MercExchange, L.L.C., — U.S. —, 126 S.Ct. 1837, 1839 (2006).

The Court finds this motion was unnecessary in order for Plaintiffs to engage in their settlement agreement responsibilities to "monitor, enforce, and plan." Class counsel did not perform a task necessary to address or preclude systemic failure of the settlement agreement's enforcement mechanisms in order to preserve the "fruits" of the consent decree. See Johnson v. City of Tulsa, 489 F.3d 1089, 1109-1110 (10th Cir. 2007). Additionally, the motion lacked the evidentiary showing necessary to obtain permanent injunctive relief.

For these reasons, the Court will deduct the hours devoted to preparing and arguing this motion. The State suggests that Plaintiffs' billing statements show that the attorneys devoted 17.75 hours to this motion. Plaintiffs do not challenge this figure. Accordingly, the Court deducts 17.75 hours at $250.00 per hour for a total of $4,437.50.

4

Of the 17.75 hours, 8.45 hours were billed by Mr. Krause, and the remaining 9.3 hours were billed by DLAC. (Docket Entry No. 262-1.) Accordingly, the Court will deduct 8.45 hours at $250.00 for a total of $2,112.50 from Mr. Krause's billing statement and 9.3 hours at $250.00 per hour for a total of $2,325.00 from DLAC's billing statement.

## C. Motion to Modify Settlement Agreement

On February 9, 2007, Plaintiffs filed a Motion for Modification of Settlement Agreement. (Docket Entry No. 166.) Plaintiffs filed the motion in direct response to the State's earlier Motion to Vacate the Agreed Order Approving the Settlement Agreement (Docket Entry No. 155) filed on January 19, 2007. The State sought to eliminate any further obligation it might have under the settlement agreement in light of Westside Mothers v. Olszewski, 454 F.3d 532, 540 (6th Cir. 2006) ("Westside Mothers II"). Plaintiffs reacted to the State's position that it should no longer have to abide by the settlement agreement by resisting the State's motion and by seeking affirmatively to modify the settlement agreement to account for changing circumstances after the settlement agreement was approved. Specifically, Plaintiffs pointed out that the number of class members in the "crisis" category continued to grow at a rapid rate while the State had reduced the pace of enrollment into waiver services from a rate of 170 individuals per month to 15 to 20 individuals per month. Plaintiffs asked for modification of the settlement agreement to require the State to enroll into waiver services all individuals who had been placed in the "crisis" category for more than 90 days. The State resisted Plaintiffs' motion, and Plaintiffs filed a reply. The Court heard oral arguments on the motion on August 31, 2007.

The Court denied Plaintiffs' motion in a Memorandum and Order entered on September 12, 2007. (Docket Entry Nos. 199 & 200.) The Court will not repeat its entire analysis here, but the

Court stated it was troubled by the increase in the number of individuals on the DMRS waiting list and the State's actions in reducing the number of available waiver enrollment slots with CMS approval. (Docket Entry No. 199, Memorandum at 13.) The Court believed "that the monthly reports provided by the Plaintiffs in support of their motion to modify establish[ed] a significant change in circumstances that may warrant revision of the Agreement." (Id.) The Court ultimately concluded, however, that Plaintiffs' proposed remedy to force the State to enroll all "crisis" individuals waiting more than 90 days into waiver services, without adequate planning, was not "suitably tailored" to the changed circumstances. (Id. at 13-14.)

Plaintiffs' motion to modify the settlement agreement, even though ultimately unsuccessful, falls within the kind of post-judgment legal activity that Plaintiffs may pursue to "monitor, enforce and plan" to preclude systemic failure of the decree's enforcement mechanisms. Faced with the State's motion to vacate the settlement agreement in its entirety, Plaintiffs were forced to confront more than systemic failure of enforcement mechanisms; Plaintiffs faced the gutting of the entire settlement agreement. Plaintiffs' attorneys were obligated to take action on behalf of the Plaintiff class to try to preserve the "fruits" of the settlement agreement. See Johnson, 489 F.3d at 1109 ("the role of the plaintiffs' attorney in protecting the fruits of victory is to ensure that the decree is being honored, not to ensure that the problems motivating the decree have been eliminated.") Plaintiffs' motion met the State's desire to vacate the settlement agreement head on and was inextricably intertwined with Plaintiffs' response to the State's motion. Plaintiffs' motion to modify the settlement agreement established that the State's reduction of waiver slots worked against the goals of the settlement agreement and caused a dramatic impact on the Plaintiff class, lengthening the period of time individuals would have to wait to receive waiver services. "The fact that plaintiffs

6

did not prevail before the district court in this phase of litigation does not deprive them of fees. When a remedial consent decree is threatened, 'plaintiffs' counsel [are] under clear obligation to make the defensive effort.'" Cody, 304 F.3d at 775 (quoting Plyler v. Evatt, 902 F.2d 273, 281 (4th Cir. 1990)). As long as the Plaintiffs' litigation to protect a remedy did not rise to the level of overkill, "'even largely unsuccessful defensive efforts may be compensable.'" Id. (quoting Association for Retarded Citizens of North Dakota v. Schafer, 83 F.3d 1008, 1010-1011 (8th Cir. 1996)). See also Plyler, 902 F.2d at 280-281 (awarding full compensation for plaintiffs' largely unsuccessful opposition to attempt to modify consent decree and holding work was essential to preservation of integrity of consent decree as a whole). Therefore, the Court finds that Plaintiffs are entitled to reasonable attorney's fees for prosecuting the motion to modify the settlement agreement.

The State suggests that the billing statements show Plaintiffs' attorneys devoted 36.75 hours to preparing the motion, their reply to the State's response, and the oral argument on the motion. The State does not argue that any of the 36.75 hours were unreasonably expended in and of themselves; only that the hours should not be compensated at all. Plaintiffs do not challenge the State's calculation that 36.75 hours were devoted to the motion to modify the settlement agreement.

Of the 36.75 hours, 9.95 hours were billed by Mr. Krause, and the remaining 26.8 hours were billed by DLAC. (Docket Entry No. 262-3.) The Court finds that these attorney hours were reasonably expended in seeking to preserve the "fruits" of the settlement agreement, and no deduction for these post-judgment activities will be made.

**D. Motion to Amend the Complaint**

In addition to the Motion to Modify the Settlement Agreement discussed above, Plaintiffs also filed a Motion to Amend the Complaint (Docket Entry No. 173) as an alternative request for

7

relief in the event the Court granted the State's motion to vacate the settlement agreement under

Westside Mothers II.   The Court denied the State's motion to vacate, in essence rendering Plaintiffs'

motion to amend moot and thus, the Court denied the motion.  This result does not mean that

Plaintiffs' filing of the motion to amend was in any way redundant, inefficient, or simply

unnecessary.  See Cody, 304 F.3d at 773.  Had the Court granted the State's motion to vacate the

settlement agreement, Plaintiffs stood ready with the motion to amend the complaint to protect the

rights of the Plaintiff class.  For the same reasons discussed in section C above, Plaintiffs are entitled

to a reasonable attorney's fee for filing this short motion.

The State calculates that Plaintiffs' attorneys spent 16.75 hours in preparing to file and argue

this motion.  Plaintiffs do not contest this figure.  Of the 16.75 hours, 3.35 hours were billed by Mr.

Krause, but these hours also included work on other motions and responses, so it is difficult to tell

precisely how much time Mr. Krause devoted only to the motion to amend.  The remaining 13.4

hours are attributed to an attorney at DLAC.  The Court finds that 16.75 hours is unreasonable for

the preparation of a one-half page motion and a one-half page supporting memorandum.  (Docket

Entry Nos. 173 & 174.)  Most of the time billed was for oral argument preparation, but the motion

to amend was not the focal point of the oral arguments held before the Court.  The motion to amend

was raised as a strategic backstop in the event the Court were to grant the motion to vacate.

The Court finds that 1.0 hour was sufficient to prepare and file the motion and prepare for

oral argument on the motion.  The Court will allow .5 hour to Mr. Krause and .5 hour to DLAC.

Therefore, the Court will deduct 15.75 hours.  Thus, Mr. Krause's billing will be reduced by 2.85

hours at $250 per hour for a total of $712.50.  DLAC's billing will be reduced by 12.9 hours at

$250.00 per hour for a total reduction of $3,225.00.

### E.  Motion for Specific Performance

On November 7, 2007, Plaintiffs filed their Second Amended Motion For An Order For Specific Performance For Non-Compliance With Settlement Agreement.  The State opposed this motion and Plaintiffs filed a reply.  Numerous attachments were appended to, or provided in support of, the motion, the response or the reply.  (Docket Entry Nos. 218-225, 228, 230-234, 244-245.) The Court heard oral argument on the motion on January 23, 2008 and issued a thirty-three page Memorandum denying the motion on the merits on July 8, 2008.  (Docket Entry Nos. 250-251.)

Much like Plaintiffs' motion to modify the settlement agreement, the motion for specific performance, even though ultimately unsuccessful, falls within the kind of post-judgment legal activity that Plaintiffs may pursue to "monitor, enforce and plan" to preclude systemic failure of the decree's enforcement mechanisms.  Plaintiffs' motion sought to preserve the "fruits" of the settlement agreement by trying to show that the State had not followed or employed various mechanisms included in the settlement agreement and that the State had not made financial contributions as agreed.  See Johnson, 489 F.3d at 1109 (noting role of plaintiffs' attorney in protecting the fruits of victory is to ensure decree is being honored).  The Court recognized that Plaintiffs had legitimate concerns about some of the State's actions, but ultimately concluded that Plaintiffs had not proved the State breached the settlement agreement in years one and two.  The Court finds that the fact the Plaintiffs did not prevail does not deprive them of fees.  Plaintiffs' litigation raised serious concerns and did not rise to the level of overkill.  See Cody, 304 F.3d at 775; Plyler, 902 F.2d at 280-281.

The State calculates that Plaintiffs' attorneys spent 48.50 hours on the motion for specific performance, and this figure is not challenged.  Of the 48.50 hours, Mr. Krause billed for 22.40 of

9

them.    The remaining 26.10 hours were billed by DLAC.  The Court observes that the billing

entries indicate the attorneys engaged in meetings, drafting of correspondence, and discovery on the

issues raised in addition to the preparation, filing, and argument of the motion itself.  The Court

finds that these hours were reasonably expended, and the Court will not make any reduction in

attorney's fees requested for the motion for specific performance.

**F.  Hours Related to Consultants and Expenses for Mailings to Class**

The State next challenges the 29.50 hours Plaintiffs' attorneys devoted to meetings and

communications with consultants and $8,288.12 in consultant fees and expenses.  Of these 29.50

hours, Mr. Krause billed for 8.8 hours.  The remaining 20.7 hours were billed by DLAC.  The State

also takes issue with $5,202.19 charged by Plaintiffs for expenses incurred in making bulk mailings

to class members.  The State contends that, while Plaintiffs have now provided information to

document that these expenses were, in fact incurred, Plaintiffs have not shown why the expenses

were reasonable or necessary to monitor or enforce the settlement agreement or plan for future years

of the agreement.

The Court has examined the expense receipts and billing statements submitted by the

Plaintiffs, as well as the summaries submitted by the State.  The State does not challenge the

$284.74 in expenses requested by Mr. Krause.  The Court is unable to determine how the State

arrived at the figure of $8,288.12 for consultant fees and expenses.  The Court finds that DLAC

spent $7,914.17 on consultant fees.  The copies of checks provided to substantiate these fees include

descriptions showing that $2,100.00 was paid to Richard F. Crowley of Denham Springs, Louisiana,

on June 4, 2007 for "Prof Services 4-1/5-13-07 Wait List"; $2,100.00 was paid to The LBH Institute

of St. Paul, Minnesota, on June 25, 2007 for "PO# 2917 Waiting List Research, Survey & Data Base

Work"; $1,600.00 was paid to The LBH Institute on July 15, 2007 for "PO# 2944 Waiting List Research"; and $2,114.17 was paid to The LBH Institute on August 31, 2007 for "PO#2976 Waiting List Research." (Docket Entry No. 257-2, Exhibit B at 8, 9, 12 & 18.)

In addition, DLAC spent $5,576.14 on mailing and postage expenses. Receipts are provided showing that $1,073.42 was spent for data processing and mailing services; $3,622.77 was spent for postage, and $879.95 was spent for printing and envelopes. (Id. at 7, 11, 19, 23-26.) In support of the reply brief, DLAC attaches Exhibit B, which is a copy of a 2-page letter sent to all persons on the DMRS waiting list in the fall of 2007 notifying them of upcoming town hall meetings and soliciting input to help determine systemic problems with the State's compliance with the settlement agreement. (Docket Entry No. 263-2, Letter.) The State claims that the town hall meetings were not a requirement of the settlement agreement, and it was not necessary for DLAC to expend funds on such a mailing because the State itself provided public notice of the town hall meetings. The State also contends the mailing expenses relate to the unsuccessful motion for specific performance and should be disallowed.

The Court will allow Plaintiffs the $5,576.14 in expenses incurred for communication by mail between class counsel and members of the class. Class counsel have an obligation to keep their clients informed about issues of importance to them, and the Court finds that the mailing to the class members was warranted.

The Court will disallow the $7,914.17 incurred for consultant fees and the attorney hours billed for working with one or more consultants. Plaintiffs sought payment of these consultant fees in a previous motion, which the Court denied. In the Order summarily denying the first motion due to certain deficiencies, the Court observed:

11

> Plaintiffs have not provided any justification for the consultant fees and expenses, which they claim are protected by the work product privilege. Plaintiffs offer to supply such information to the Court for *in camera* review. Plaintiffs should do so if they expect the Court to consider reimbursement for these charges.

(Docket Entry No. 256, Order at 2.)

In this amended motion, Plaintiffs did not provide any materials to the Court for *in camera* review. Plaintiffs state briefly in the supporting Memorandum that the "consultant was used to help analyze the results of the provider survey." (Docket Entry No. 258.) In the reply brief, Plaintiffs state that they wished to obtain an overview of the status of the infrastructure since the State admittedly had not done comprehensive surveys in this area. Plaintiffs' attorneys claim they had a duty to take action to develop the provider infrastructure so that it could be ready to handle individuals moving off the waiting list and into funding for waiver services. Plaintiffs state that, if they did not conduct these types of monitoring activities, they would have to rely solely on the State's opinions on the success or failure of its compliance with the settlement agreement and in regard to necessary planning steps for the remaining years of the settlement agreement. Plaintiffs provide the declarations of attorneys Martha Lafferty, Sherry Wilds, Gary Housepian and Kent Krause that "[t]he fees, expenses, and costs related to the use of a consultant were necessary for monitoring, enforcing, and planning for the fulfillment of the terms of the Settlement Agreement in this case." (Docket Entry No. 257-3, Exhibit C, Declarations.)

This general information about the use of consultants is not sufficient to satisfy the Court that Plaintiffs are entitled to require the State to pay for the consultant fees and the attorney hours billed for working with the consultant. Plaintiffs have provided the Court with nothing from which the Court can discern how a provider survey was formulated and conducted, how the consultant was utilized to interpret the results of the provider survey, or how these activities were reasonably used

12

to monitor or enforce the settlement agreement or plan for the later years of the settlement agreement. Because the prerequisites of the Court's prior Order were not satisfied, the Court will disallow 8.8 hours or $2,200.00 on Mr. Krause's billing statement, $5,175.00 for 20.7 attorney hours on DLAC's billing statement, and $7,914.17 in consultant fees.

Thus, of the $13,710.12 in expenses sought by DLAC, the Court will allow only $5,795.95, which includes the costs of the mailing to members of the class ($5,576.14) and other miscellaneous expenses such as Federal Express ($77.60), copies ($115.21), and parking ($27.00). The Court will also allow Mr. Krause the entire amount of $284.74 he billed for miscellaneous expenses.

**G. Motion to Vacate Settlement Agreement and Motion to Strike State's Appeal**

The State filed its Motion to Vacate the Agreed Order Approving the Settlement Agreement (Docket Entry No. 155) on January 19, 2007, seeking to end any further obligation it might have under the settlement agreement in light of Westside Mothers II. When the Court denied the motion, the State appealed to the Sixth Circuit and Plaintiffs moved in this Court to strike the notice of appeal. The State calculates that Plaintiffs billed for 144.75 hours in responding to the motion to vacate and in moving to strike the State's appeal.

The State's motion was indeed significant because, if granted, the motion had the potential to set aside the entire settlement agreement adopted in the case. The Court received extensive briefing, exhibits, and oral arguments from the parties and, on September 12, 2007, the Court denied the State's motion. (Docket Entry Nos. 199 & 200, Memorandum and Order.) Because the State's appeal remains pending in the Sixth Circuit, the State contends it would be premature for the Court to entertain Plaintiffs' request for attorney's fees incurred in responding to the motion to vacate at this time. The State contends the pending appeal could be decided in the State's favor and in that

13

event the State would not owe the Plaintiffs any attorney's fees for litigating the motion to vacate. In the event the Court does not hold this portion of the fee request in abeyance, the State objects to time spent on the unsuccessful motion to strike the appeal (Brewer, Krause - 5.4 hours @ $225 ($1,215.00) and 4.3 hours @ $250.00 ($1,075.00) and .60 hours at $250.00 ($150.00) for DLAC) as well as the .80 hour at $250.00 ($200.00) spent by DLAC in seeking an attorney's admission to the bar of the Sixth Circuit.

The Court agrees with the State that the attorney hours expended on the unsuccessful motion to strike the appeal and for an attorney to obtain admission to the Sixth Circuit bar should be disallowed. Accordingly, 11.1 hours are deducted from the total of 144.75 hours to reach 133.65 hours. Of these 133.65 hours, Mr. Krause billed for 24.40 hours and the remaining 109.25 hours were billed by attorneys at DLAC.

Plaintiffs' successful opposition to the State's motion to vacate the settlement agreement falls squarely within the kind of post-judgment legal activity that Plaintiffs may pursue to enforce the settlement agreement. As stated earlier, faced with the State's motion to vacate the settlement agreement in its entirety, Plaintiffs were forced to confront more than systemic failure of enforcement mechanisms; Plaintiffs faced the gutting of the entire settlement agreement. Plaintiffs' attorneys were obligated to take action on behalf of the Plaintiff class to try to preserve the "fruits" of the settlement agreement. See Johnson, 489 F.3d at 1109; Cody, 304 F.3d at 775 ("When a remedial consent decree is threatened, 'plaintiffs' counsel [are] under clear obligation to make the defensive effort.'"(quoting Plyler v. Evatt, 902 F.2d 273, 281 (4th Cir. 1990)). Therefore, the Court finds that Plaintiffs are entitled to reasonable attorney's fees for opposing the State's motion to vacate the settlement agreement.

14

There is some merit to the State's argument that this portion of the fee request should be held in abeyance pending the outcome of the Sixth Circuit appeal of the Court's decision denying the motion to vacate. Oral argument on the appellate case was held in September 2008, and an opinion from the Sixth Circuit will be forthcoming. But if the Sixth Circuit holds that the State's motion to vacate the settlement agreement should have been granted in light of <u>Westside Mothers II</u>, then it would seem that all fees earned by Plaintiffs' attorneys during this post-judgment litigation might be affected, not just those fees relating to the motion to vacate the settlement agreement. Plaintiffs were required to mount a vigorous defense to the State's motion to vacate, and the Court sees no reason to postpone its decision on the attorney's fee issue. Therefore, the Court will award Mr. Krause 24.40 hours or $6,100.00 for his work in opposing the motion to vacate. The Court will award DLAC 109.25 hours or $27,312.50 for its work opposing the State's motion to vacate.

## H. CONCLUSION

DLAC sought attorney's fees of $72,500.00 and expenses of $13,710.12 for a total of $86,210.12. For the reasons stated above, the Court reduces DLAC's request for attorney's fees by a total of 51.6 hours at $250.00 per hour for a total reduction of $12,900.00 in attorney's fees. The Court also reduces DLAC's expense request by $7,914.17. This results in an attorney's fee award to DLAC of $59,600.00 plus expenses of $5,795.95 for a total award of $65,395.95.

Brewer, Krause, Brooks, Chastain & Burrow PLLC sought attorney's fees of $28,540.00 and expenses of $284.74. For the reasons stated above, the Court reduces Mr. Krause's request for attorney's fees by a total of 24.7 hours at $250.00 per hour ($6,175.00) and 5.4 hours at $225.00 per hour ($1,215.00) for a total reduction of $7,390.00 in attorney's fees. The Court awards the $284.74 requested in expenses. This results in an attorney's fee award to Brewer, Krause, Brooks,

15

Chastain & Burrow PLLC of $21,150.00 in attorney's fees and $284.74 in expenses for a total award

of $21,434.74.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

16